UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JUAN JOSE SOTO-MEDINA,

                Petitioner,

v.

ROBERT LYNCH et al.,

                Respondents.

_____/

Case No. 1:25-cv-1704

Honorable Jane M. Beckering

## OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action on December 10, 2025, by filing a counseled petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will conditionally grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The Court will also grant Petitioner's motion for leave to file a reply brief *instanter* (ECF No. 6).

### Discussion

### I.      Procedural History

In his § 2241 petition, Petitioner challenges the constitutionality of his current detention following an order issued by the Detroit Immigration Court denying him bond, and asks the Court to, *inter alia*, issue a writ of habeas corpus ordering Respondents to release Petitioner or, in the alternative, provide Petitioner with a bond hearing where the government bears the burden of proof by clear and convincing evidence that Petitioner is a flight risk or danger to the community. (Verified Pet., ECF No. 1, PageID.7.)

In an Order entered on December 11, 2025, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted.  (Order, ECF No. 3.)  Respondents filed their response on December 16, 2025, (ECF No. 4.), and Petitioner sought leave to file his reply on December 26, 2025, (ECF No. 6).

On December 22, 2025, Petitioner filed his first motion for an extension of time to file his reply brief. (ECF No. 5.)  Petitioner's counsel explained that the issues at hand required additional research, and that his exceptionally high case load and briefing schedule, combined with the holidays, contributed to the need for additional time.  (*Id.*, PageID.40.)  Then, on December 26, 2025, Petitioner filed an unopposed motion for leave to file his reply brief *instanter* (ECF No. 6) with a copy of the reply brief attached (ECF No. 6, Ex. A at PageID.45–65).  For the reasons set forth in Petitioner's December 22 and December 26, 2025, motions (ECF Nos. 5, 6), the Court will grant Petitioner's motion for an extension of time to file his reply brief (ECF No. 5) and unopposed motion for leave to file his reply brief *instanter* (ECF No. 6) and will direct the Clerk's Office to file a copy of the reply brief attached to the motion (ECF No. 6, Ex. A at PageID.45–65) as a separate docket entry.

## II.    Factual Background

Petitioner is a citizen of Venezuela.  (Pet., ECF No. 1, PageID.3.)  He arrived in the United States seeking asylum on August 3, 2023.  (*Id.*, PageID.4.)  Petitioner is authorized to work in the United States and his application for asylum remains pending. (*Id.*)  Prior to his detention, he resided in Chicago, Illinois, with his wife and young daughter.  (*Id.*)  Petitioner is the sole means of support for his family, and he has no criminal record in the United States or any other country. (*Id.*)

On October 1, 2025, Petitioner was encountered and arrested by ICE agents. (*Id.*) On November 7, 2025, Petitioner filed a § 2241 petition challenging his initial detention without a bond hearing in *Soto-Medina v. Lynch*, No. 1:25-cv-1392 (W.D. Mich.) (*Soto-Medina I*). In *Soto-Medina I*, the Court conditionally granted Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, ordering Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the date of the Court's Opinion and Judgment or, in the alternative, immediately release Petitioner from custody. *Soto-Medina I*, 2025 WL 3267761, at *1 (W.D. Mich. Nov. 24, 2025).

On November 26, 2025, Petitioner received a bond hearing pursuant to § 1226(a). (Pet., ECF No. 1, PageID.4.) At that hearing, Petitioner presented evidence that he was not a flight risk or danger to the community. (*Id.*; ECF No. 4-2, PageID.25–26.) He presented evidence of his family connections, that his daughter attended Chicago Public Schools, and that he has a pending asylum application and valid work authorization. (*Id.*) The government did not present any evidence to show that Petitioner was a flight risk or danger to the community. (Pet., ECF No. 1, PageID.5.) At the conclusion of that hearing, the immigration judge denied Petitioner's request for bond because Petitioner had "not established that he is not a flight risk." (Immigration Judge Order, ECF No. 4-3, PageID.37.)

### III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-

3

related matters.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## IV.    Jurisdiction

Respondents argue that 8 U.S.C. § 1226(e) divests this Court of jurisdiction over Petitioner's habeas action.  (Resp., ECF No. 4, PageID.14.)  Section 1226(e) states:

> (e) Judicial review
>
> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e).

Here, however, Petitioner does not challenge a "discretionary judgment" or "decision" by the Attorney General regarding the grant or denial of bond. Petitioner has filed this habeas action arguing that the discretionary process itself, in which noncitizens detained under § 1226(a) must prove that they are not dangerous and are not flight risks, is unconstitutional.  "Section 1226(e) contains no explicit provision barring habeas review." *Demore v. Kim*, 538 U.S. 510, 517 (2003) (holding that § 1226(e) does not bar a "constructional challenge to the legislation authorizing [the noncitizen's] detention without bail").  The Supreme Court has made clear that a challenge to "the extent of the Government's detention authority under the 'statutory framework' as a whole . . . is not a matter of 'discretionary judgment,' 'action,' or 'decision'" and, therefore, "falls outside the scope of § 1226(e)." *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018).

Several circuit courts have concluded in analogous contexts that Section 1226(e) does not deprive the Court of jurisdiction to review a due process challenge like the one at bar, and Respondents cite no binding or applicable authority to the contrary.  *See, e.g., Hernandez-Lara*, 10 F.4th at 33 ("To the extent the government is arguing that section 1226(e) deprives the district

4

court or this court of jurisdiction, that claim fails: [petitioner] does not challenge the IJ's ultimate exercise of discretion, but rather 'the extent of the Government's detention authority under the 'statutory framework' as a whole."); *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("Whether [petitioner] received the due process to which he was entitled 'is not a matter of discretion' and is subject to judicial review."); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011), *distinguished on other grounds by Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) ("Although § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law."); *Miranda v. Garland*, 34 F.4th 338, 353 (4th Cir. 2022) (concluding that "§ 1226(e) does not bar our review"); *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018) ("Because [petitioner] does not challenge a particular action or decision, but rather 'the statutory framework that permits his detention without bail,' *Demore*, 538 U.S. at 517, § 1226(e) does not deprive the District Court or this Court of jurisdiction over [petitioner's] petition." (cleaned up).)

Accordingly, the Court concludes that § 1226(e) does not deprive the Court of jurisdiction.

## V.    Exhaustion

Respondents argue that the Court should deny Petitioner's request for habeas corpus relief because Petitioner has not exhausted his administrative remedies.  Specifically, Respondents argue that Petitioner must appeal the decision denying bond to the Board of Immigration Appeals (BIA). (Resp., ECF No. 1, PageID.14.)

Here, because Petitioner raises a constitutional due process challenge, there is no applicable statute or rule that mandates administrative exhaustion by Petitioner.  Thus, whether to require exhaustion is within this Court's "sound judicial discretion." *See Shearson v. Holder*, 725 F.3d 588, 593–94 (6th Cir. 2013) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)).  "Courts have described an implied requirement to raise issues with an agency as a 'judge-made,'

'prudential,' or 'common law' duty to exhaust," *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019) (citations omitted), and such a court-made exhaustion rule must comply with statutory schemes and Congressional intent, *Shearson*, 725 F.3d at 593–94.  Notably, "[t]he Sixth Circuit has not formally adopted a standard for determining when prudential exhaustion applies." *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025).  However, courts within the Sixth Circuit "have applied the three-factor test" set forth in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (derived from *McGee v. United States*, 402 U.S. 479, 484 (1971); *McKart v. United States*, 395 U.S. 185, 193–95 (1969)), to determine whether prudential exhaustion should be required. *Id.*  Under this three-factor test:

> Courts may require prudential exhaustion when:
>
> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (citing *Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015)).

Upon consideration of these factors, this Court concludes that prudential exhaustion should not be required in Petitioner's case.  First, the central question presented by Petitioner's § 2241 petition is whether the Due Process Clause requires that the government be required to prove, by clear and convincing evidence, that the noncitizen is a flight risk or a danger to the community to justify denial of bond.  That determination is principally a legal question of constitutional interpretation and does not require the record that would be developed if the Court required Petitioner to exhaust his administrative remedies.

Second, Petitioner's constitutional challenge to his detention does not require exhaustion. The Sixth Circuit has noted that due process challenges, such as the one raised by Petitioner, which are not premised on "correctable procedural errors," generally do not require exhaustion because the BIA cannot review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) (discussing that "an alien's due process challenge generally does not require exhaustion," but noting that an "alien must raise correctable procedural errors," such as a claim "that the BIA denied him due process by relying upon an 'incomplete and inaccurate' transcript to review his case," "to the BIA"). Finally, it is doubtful that BIA review of Petitioner's custody would preclude the need for judicial review. The Court reaches that conclusion based upon the fact that BIA precedent has repeatedly placed the burden on the noncitizen "to show to the satisfaction of the Immigration Judge that he or she merits release on bond." *In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Accordingly, for the foregoing reasons, this Court concludes that prudential exhaustion is not required.

Alternatively, even in situations where a court may ordinarily apply prudential exhaustion, the court may still choose to waive exhaustion. *See Lopez-Campos*, 2025 WL 2496379, at *4 (citations omitted). A court may choose to rule upon the merits of the issues presented when the "legal question is 'fit' for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation omitted). A court may also waive exhaustion if the "pursuit of administrative remedies would be a futile gesture." *Shearson*, 725 F.3d at 594 (citation omitted).

Here, requiring Petitioner to exhaust his administrative remedies would likely be futile because the BIA has already determined it is reasonable to impose the burden of proof that applies upon arrest to the subsequent redetermination decision by the Immigration Judge. Moreover,

appeals of bond denials "typically take six months or more to be resolved at the BIA." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025) (citation omitted).  It is "unmistakable that . . . depriving [Petitioner] of his liberty while awaiting a BIA appeal decision certainly equates to hardship. And any delay results in the very harm [Petitioner] is trying to avoid . . . – detention." *See Lopez-Campos*, 2025 WL 2496379, at *5.

In sum, the Court declines to enforce the doctrine of prudential exhaustion against Petitioner. Additionally, even if Respondents had established that a court might "ordinarily apply prudential exhaustion" on the question presented here—which they have not—the Court would still "choose to waive exhaustion" for the reasons noted above.  *See Lopez-Campos*, 2025 WL 2496379, at *4; *Shalala*, 529 U.S. at 13; *Shearson*, 725 F.3d at 594.  The Court will proceed to address the merits of Petitioner's § 2241 petition.

## VI.    Merits Discussion

Petitioner argues that his detention violates the Fifth Amendment's Due Process Clause. (Pet., ECF No. 1, PageID.6.)   Specifically, he asserts that due process mandates that the government be required to prove, by clear and convincing evidence, that the noncitizen is a flight risk or a danger to the community to justify denial of bond. (*Id.*)

Respondents counter Petitioner's arguments by asserting that, in the context of immigration proceedings, due process is coextensive with the removal procedures provided by Congress. (Resp., ECF No. 4, PageID.15.)  They claim that Petitioner's arguments are foreclosed by BIA precedent and the regulations interpreting the INA that place the burden of proof on the noncitizen. (*Id.*, PageID.16.)  The Court addresses, in turn, the allocation of the burden of proof and the applicable standard of proof.

8

## A. The Burden of Proof is on the Government

"Section 1226(a) is silent as to what burden of proof applies in bond hearings and who bears that burden." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021) (citing 8 U.S.C. § 1226(a)). Following the 1996 enactment of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), the Immigration and Naturalization Service (INS) adopted new regulations concerning the initial custody determination by the arresting officer. *See* 8 C.F.R. § 236.1(c)(2)–(8). Under those regulations, "the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id*. § 236.1(c)(8).

The new regulations concerned an initial custody decision by an officer *upon arrest*; however, the BIA found it reasonable to apply the standard set forth in 8 C.F.R. § 236.1(c)(8) to § 1226(a) custody redetermination hearings, placing "[t]he burden . . . on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond." *In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Under that standard, the government "need not show anything to justify incarceration for the pendency of removal proceedings, no matter the length of those proceedings." *Velasco Lopez v. Decker*, 978 F.3d 842, 849 (2d Cir. 2020). Neither the Supreme Court nor the Sixth Circuit has addressed whether applying this burden of proof at the bond redetermination hearing comports with the requirements of due process.

Respondents' arguments concerning agency regulations and BIA caselaw are not persuasive in the context of the question before the Court. First, as discussed above, "the BIA lacks authority to review constitutional challenges." *See Sterkaj*, 439 F.3d at 279. Second, BIA decisions imposing the burden of proof on detainees at custody redetermination hearings—*In re Guerra* and *In re Adeniji*, 22 I. & N. Dec. 1102, 1116 (BIA 1999)—did not interpret § 1226(a) as

mandating the standard of proof to be applied at bond hearings.  Instead, they looked to 8 C.F.R. § 236.1(c)(8), which applies to decisions by officers concerning the issuance of arrest warrants, and found it reasonable to apply the same standard to § 1226(a) bond hearings.  *See* 8 C.F.R. § 236.1(c)(8) (requiring the allegedly removable noncitizen to "demonstrate to the satisfaction of the officer" that he is neither dangerous nor a flight risk in order to secure release).  Third, this Court is not bound by or required to give deference to an agency interpretation of a statute.  *See Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 413 (2024) (noting that "courts need not and under the [Administrative Procedure Act (APA)] may not defer to an agency interpretation of the law simply because a statute is ambiguous").

In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), "the Supreme Court held that [section] 1226(a) does not mandate that a clear and convincing evidence burden be placed on the government in bond hearings, [but] it left open the question of whether the Due Process Clause does." *Darko v. Sessions*, 342 F. Supp. 3d 429, 434–35 (S.D.N.Y. 2018).[1]  In considering the question left open by *Jennings*, this Court joins the majority of courts in finding that due process requires that the *government* bear the burden of justifying a noncitizen's § 1226(a) detention.[2]

---

[1] Respondents' reliance upon *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138–40 (2020), is misplaced. *Thuraissigiam* did not broadly hold that a noncitizen's right to due process is limited to whatever is provided by Congress in the statutory provision at hand.  The *Thuraissigiam* Court stated: "an alien in respondent's position has only those rights regarding admission that Congress has provided by statute . . . . Because the Due Process Clause provides nothing more, it does not require review of that determination or how it was made." *Id.* at 140. Petitioner is not challenging the process by which his application for admission is decided; he is challenging his detention. And, indeed, in this context, Congress has not provided for an allocation of the burden of proof by statute.  As the Court in *Thuraissigiam* clarified, "aliens who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

[2] The federal appellate courts that have the addressed this question are split.  The First and Second Circuits have held that the burden of proof for continued immigration detention must be placed on the government.  *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 39 (1st Cir. 2021) (concluding "that the government must bear the burden of proving dangerousness or flight risk in order to continue

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted).  The Fifth Amendment's Due

---

detaining a noncitizen under section 1226(a)"); *Velasco Lopez v. Decker*, 978 F.3d 842, 855–57 (2d Cir. 2020) (holding that the government must bear the burden of proving danger and flight risk by clear and convincing evidence if an individual faces prolonged detention).

The Ninth Circuit requires the government to meet a clear and convincing burden of proof to justify continued detention of some detainees under Section 1226, but it has declined to apply that burden in the specific context of a second bond hearing under Section 1226(a).  *Compare Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) (concluding in an analogous dispute implicating Section 1226 that "due process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake . . . are both particularly important and more substantial than mere loss of money" and requiring the government to justify prolonged detention by clear and convincing evidence); *Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) (citing *Singh* and noting that the "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that [petitioner] is a danger to the community"; *with Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203 (9th Cir. 2022) (concluding that the "Due Process Clause [does not] entitle [petitioner] to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence").

The Third and Fourth Circuits have assigned the detainee the burden of proof on the questions of flight risk and danger to the community.  *See Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (holding that requiring a Section 1226(a) detainee to show that he or she is not a danger or the community or a flight risk by a preponderance of the evidence does not violate the Due Process Clause); *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 277, 279 (3d Cir. 2018) (holding that after being detained for fourteen months, the Due Process Clause did not entitle the petitioner to a *second* bond hearing in which the government would bear the burden of justifying his continued detention—the court expressly noted that the petitioner did not challenge the adequacy of his initial bond hearing, and did not identify a basis in the record to demonstrate that his case was unreasonably prolonged).  These decisions, at bottom, reason that aliens are not entitled to the due process rights articulated in *Addington*.  *See Miranda*, 34 F.4th 338, 359 ("The requirements of *Addington*, which apply to the detention of citizens, do not apply in the context of immigration removal proceedings.").

Although the Seventh and Tenth Circuits have not taken up the issue, courts within those circuits have held that due process requires that the government bear the burden of proof.  *See, e.g., Molina Ochoa v. Noem*, No. 1:25-cv-00881-JB-LF, 2025 WL 3125846, at *13 (D.N.M. Nov. 7, 2025) (holding that the government must "bear the burden at a § 1226(a) bond hearing of proving by clear and convincing evidence that Petitioner is a flight risk or a danger to the community"); *Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *8 (N.D. Ill. Oct. 16, 2025) (same).

Process Clause extends to all persons, regardless of status. *See A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025). Thus, noncitizens, such as Petitioner, are entitled to its protections. *See id.*; *see also Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 246837, at *3 (6th Cir. Jan. 18. 2023). While detention pending removal is "a constitutionally valid aspect of the deportation process," such detention must comport with due process. *See Demore v. Kim*, 538 U.S. 510, 523 (2003).

In the context of the Due Process Clause, requiring a particular "standard of proof 'serves to allocate the risk of error between the litigants' and reflects the 'relative importance attached to the ultimate decision.'" *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 213 (3d Cir. 2020) (quoting *Addington v. Texas*, 441 U.S. 418, 423 (1979)). Thus, the Supreme Court has repeatedly reaffirmed that "due process places a heightened burden of proof *on the State* in civil proceedings in which the 'individual interests at stake . . . are both particularly important and more substantial than mere loss of money.'" *Cooper v. Oklahoma,* 517 U.S. 348, 363 (1996) (alterations in original; emphasis added) (quoting *Santosky v. Kramer,* 455 U.S. 745, 756 (1982)); *see also Foucha v. Louisiana,* 504 U.S. 71, 80 (1992) (requiring clear and convincing evidence to justify civil commitment because "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause"). "The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." *Addington*, 441 U.S. at 427. The Supreme Court, therefore, upheld the application of the "clear and convincing" standard for civil commitment proceedings because "the individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity that due process requires *the state to justify confinement* by proof *more substantial than a mere preponderance of the evidence*." *Id.* (emphasis added); *see also United States v. Salerno*, 481 U.S. 739, 751 (1987) (holding that pretrial detention will be permitted under

the Due Process Clause "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community").

Respondents have failed to cite binding or persuasive authority that counsels this Court to deviate from Supreme Court precedent simply because this case falls within the context of immigration proceedings.  The Supreme Court has made clear that "civil commitment for *any* purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington*, 441 U.S. at 427 (emphasis added).  As the Court explained in *Mathews v. Diaz*:

> There are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law.  Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection.

426 U.S. 67, 77 (1976) (internal citations omitted); *accord Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (explaining that the "Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 35 (1st Cir. 2021) (relying on *Addington* to assign the burden of proof to the government); *Velasco Lopez v. Decker*, 978 F.3d 842, 856–57 (2d Cir. 2020) (reaching the same conclusion and noting that the government bearing the burden "strikes a fair balance between the rights of the individual and the legitimate concerns of the state").

The *Mathews v. Eldridge* balancing test also indicates that due process requires the government to bear the burden of proof.  424 U.S. 319 (1976).[3]  Under *Mathews*, the Court must consider the following three factors: "(1) the private interest that will be affected by official action;

---

[3]  The Sixth Circuit has stated that the balancing test set forth in *Mathews* applies in the context of immigration detention.  *See, e.g.*, *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852–56 (6th Cir. 2020) ("If this court has previously addressed the due-process claim, then we are bound by precedent; if the claim is an issue of first impression, then we generally apply the three-factor test the Supreme Court set out in *Mathews v. Eldridge*." (citation omitted)).

(2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail." *See Lopez-Campos*, 2025 WL 2496379, at *9 (citing *Mathews*, 424 U.S. at 335). The Court will address each factor in turn to determine the proper allocation of the burden of proof here.

The first *Mathews* factor weighs in favor of Petitioner. There is no dispute that Petitioner has a significant private interest in avoiding detention, as one of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citation omitted). The Court may also consider Petitioner's conditions of confinement, i.e., "whether a detainee is held in conditions indistinguishable from criminal incarceration." *See Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (citing *Hernandez-Lara*, 10 F.4th at 28, and *Velasco Lopez*, 978 F.3d at 851). There can be no doubt that he is "experiencing [many of] the deprivations of incarceration, including loss of contact with friends and family, loss of income earning . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *Id.* at 1187. And though the purpose of this detention is to facilitate removal, the Supreme Court has "repeatedly reaffirmed that civil commitment for *any* purpose constitutes a significant deprivation of liberty." *Addington*, 441 U.S. at 427. Additionally, "it is important to recognize that the deprivation of liberty that individuals detained under section 1226(a) experience is not the result of a criminal adjudication," unlike those detained under Section 1226(c), given that "section 1226(a) applies to a wide swath of noncitizens, many of whom . . . have no criminal record at all." *See Alvarez Ortiz v. Freden*, 2025 WL 3085032 at *13 (citing *Hernandez-Lara*, 10 F.4th at 36, and *Velasco Lopez*, 978 F.3d at 851).

Furthermore, Courts around the country have analyzed the extent to which the length of incarceration under Section 1226(a) affects the weighting of the first *Mathews* factor.[4]  *Hernandez Lara* provides an extended and carefully considered analysis on this point:

> We recognize that removal proceedings have an end point and that the liberty interest of a noncitizen detained under section 1226(a) may therefore be slightly less weighty than that of individuals facing indefinite and prolonged detention. But only slightly less: The exact length of detention under section 1226(a) is impossible to predict[,] can be quite lengthy [and routinely] exceeds the "very limited time of the detention at stake" in *Demore*, which was found to "last[ ] roughly a month and a half in the vast majority of cases . . . and about five months in the minority of cases in which the [non-citizen] chooses to appeal." 538 U.S. at 530.  Moreover, "[d]etention under § 1226(a) is frequently prolonged because it continues until all proceedings and appeals are concluded . . . even where an individual has prevailed and the Government appeals." *Velasco Lopez*, 978 F.3d at 852.

*Hernandez-Lara*, 10 F.4th at 29–30 (citing data indicating that many Section 1226(a) detainees are incarcerated for two years or longer).  Courts relying on similar reasoning have concluded that the first *Mathews* factor indicates the government should bear the burden of proof at an initial Section 1226(a) bond hearing even "absent prolonged detention."  *See Alvarez Ortiz*, 2025 WL 3085032 at *12 (collecting cases); *see also Miranda v. Garland*, 34 F.4th 338, 378 (4th Cir. 2022) (Urbanski, J., concurring in part) (noting a "a growing chorus of decisions" by federal district and

---

[4] For example, *Velasco Lopez* addressed a petitioner's argument that his second bond hearing during his Section 1226(a) detention violated due process.  *See* 978 F.3d at 855, 855 n.3.  The Second Circuit applied the *Mathews* factors and concluded the duration of petitioner's prolonged, fifteen-month detention weighed in favor of a new bond hearing at which the government bore the burden of proof to demonstrate flight risk or danger to the community by clear and convincing evidence.  But the Court noted that this "case does not require us to establish a bright-line rule for when due process entitles an individual detained under [section] 1226(a) to a new bond hearing with a shifted burden," leaving open the possibility that a shorter period of detention might affect the *Mathews* balancing. *See id*.  That said, for the reasons noted below, "courts [within the Second Circuit] faced with due process challenges to initial bond hearings since *Velasco Lopez* have required the government to bear the burden of proof at all section 1226(a) bond hearings" by clear and convincing evidence, including initial hearings that take place prior to prolonged detention. *See B.S. v. Joyce*, 2023 WL 1962808, at *4 (S.D.N.Y. Feb. 13, 2023); *Alvarez Ortiz v. Freden*, No. 25-CV-960-LJV, 2025 WL 3085032, at *12 (W.D.N.Y. Nov. 4, 2025) (collecting cases).

appellate courts "around the country" that have concluded the government should bear the burden

of justifying the continued detention of the noncitizen at Section 1226(a) bond redetermination

hearings by clear and convincing evidence").

Placing the burden on the government also satisfies the second *Mathews* factor, reducing

the risk of erroneous deprivation.  The Court recognizes that the Government has an interest in

"ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to

the community." [5] *Zadvydas*, 533 U.S. at 690 (internal quotation marks and alteration omitted).

However, as the Supreme Court explained in response to a similar argument in *Zadvydas*, "the

choice . . . is not between imprisonment and the alien 'living at large'" in this country but "between

imprisonment and supervision under release conditions that may not be violated."  533 U.S. at 696.

At the same time, those facing removal have no right to counsel "and very often cannot obtain

counsel on their own, particularly if they are detained."  *Hernandez-Lara*, 10 F.4th at 30.

Moreover, "detained individuals will likely experience difficulty in gathering evidence on their

own behalf" and often face language barriers.  *Id.*; *see Moncrieffe v. Holder*, 569 U.S. 184, 201

(2013) (recognizing that detained aliens "have little ability to collect evidence").  Lastly, it is no

---

[5] It bears noting that "like section 1226(c)"—a separate section that Congress enacted through IIRIRA in 1996 to require the detention of "criminal aliens" convicted of "serious crimes"—an amendment to "section 1226(a)" was "motivated by Congress's concern that '[a] chief reason why many deportable aliens are not removed from the United States is the inability of [immigration officials] to detain such aliens through the course of their deportation proceedings.'  [But] IIRIRA did not change section 1226(a) except by increasing the minimum bond amount from $500 to $1,500.  In other words, even as Congress limited bond opportunities for noncitizens covered by section 1226(c), it chose to maintain section 1226(a)'s discretionary bond provision." *Hernandez-Lara*, 10 F.4th at 35–36; *accord Velasco Lopez*, 978 F.3d at 848 ("At the same time [that it enacted § 1226(c) as to "criminal aliens"], Congress left untouched the general detention provision at issue here, 8 U.S.C. § 1226(a), aside from increasing the minimum bond amount from $500 to $1500."). In short, Congress specifically considered and addressed the issue of failures to appear by detainees in 1996 by enacting 1226(c), ordering mandatory detention for certain individuals based on serious criminal convictions, and by simply raising the bond amount for those who fall under 1226(a).

secret that proving a negative as to danger and risk of flight can be difficult if not impossible in some cases.  *See Hernandez-Lara,* 10 F.4th at 31 ("[P]roving a negative (especially a lack of danger) can often be more difficult than proving a cause for concern."); *Elkins v. United States*, 364 U.S. 206, 218 (1960) (noting that "as a practical matter it is never easy to prove a negative"). "For all of these reasons, a detainee often starts out behind the eight ball in a bond proceeding, and the opportunities for prejudicial error abound." *Hernandez-Lara*, 10 F.4th at 31.

Finally, under the third *Mathews* factor, the Court recognizes that the importance of the government's interest in ensuring that noncitizens do not abscond and commit crimes is well-established and legitimate.  *Velasco Lopez*, 978 F.3d at 854.  "The government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings, but any detention must 'bear[ ] [a] reasonable relation to [its] purpose.'"  *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (alterations in original) (quoting *Zadvydas*, 533 U.S. at 690).  But, as the Second Circuit has explained:

> [T]he Government has not articulated an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight.  On the contrary, shifting the burden of proof to the Government to justify continued detention promotes the Government's interest—one we believe to be paramount—in minimizing the enormous impact of incarceration in cases where it serves no purpose . . . .  When the Government incarcerates individuals it cannot show to be a poor bail risk for prolonged periods of time, as in this case, it separates families and removes from the community breadwinners, caregivers, parents, siblings and employees.  The Government articulates no public interest that any of this serves and we see none.

*Velasco Lopez*, 978 F.3d at 854–55.  Indeed, common sense suggests that it is in the government's interest to limit the unnecessary detention of aliens deemed not to be a danger or flight risk.  "In short, given the risk that the current procedures lead to many instances of needless detention, entailing substantial social and financial costs, the public interest in placing the burden of proof on the detainee is uncertain at best, and may well be negative."  *Hernandez-Lara*, 10 F.4th at 33.

In sum, the *Mathews* factors establish that due process requires the government to bear the burden of demonstrating that Petitioner is a flight risk or danger to the community to deny bond. As noted above, a majority of federal courts, including both trial and appellate courts, have taken this position. *See, e.g., Miranda*, 34 F.4th at 378 (Urbanski, J., concurring in part).

## B. The Applicable Standard of Proof is Clear and Convincing Evidence

"Having decided that the government bears the burden of proof, we now turn to the extent of that burden." *See Hernandez-Lara*, 10 F.4th at 39. s noted above, "the function of legal process is to minimize the risk of erroneous decisions," and the standard of proof "serves to allocate the risk of error between the litigants." *Addington*, 441 U.S. at 425. In detention cases, applying a heightened "standard of proof . . . reflects the value society places on individual liberty," and the government must justify detention by clear and convincing evidence in several analogous contexts. *See id.* at 425, 433; *Hernandez-Lara*, 10 F.4th at 41 (collecting cases regarding civil commitment, termination of parental rights, deportation, and denaturalization). As stated by the Second Circuit:

> The Government's claim that these [due process] precedents are inapplicable in an immigration context is unpersuasive. As one [Supreme Court] Justice has noted: "[n]owhere did we suggest that the 'constitutionally protected liberty interest' in avoiding physical confinement, even  for aliens already ordered removed, was conceptually different from the liberty interest of citizens[.]" *Demore*, 538 U.S. at 553 (Souter, J., concurring in part and dissenting in part). Merely invoking the fact that a case is raised in the immigration context does nothing to address much less to abrogate due process principles.
>
> *We believe that it is improper to allocate the risk of error evenly between the individual and the Government when the potential injury is as significant as the individual's liberty*. Accordingly, we conclude that a clear and convincing evidence standard of proof provides the appropriate level of procedural protection. *See Singh*, 638 F.3d at 1203–04 (quoting *Addington*, 441 U.S. at 427). We therefore conclude that the district court's order requiring the Government to prove that [petitioner] is a danger to the community or a flight risk by clear and convincing evidence to justify his continued detention "strikes a fair balance between the rights of the individual and the legitimate concerns of the state." *Addington*, 441 U.S. at 431.

*Velasco Lopez*, 978 F.3d at 856–57 (cleaned up) (emphasis added).  The Court concludes that the Second Circuit's reasoning has merit and will apply a clear and convincing burden of proof here.

The First Circuit reached a slightly different conclusion, stating that "due process requires the government to either (1) prove by clear and convincing evidence that [the detainee] poses a danger to the community or (2) prove by a preponderance of the evidence that [the detainee] poses a flight risk." *Hernandez-Lara*, 10 F.4th at 41.  The court reasoned that a detainee has "knowledge of many of the most relevant factors [regarding flight risk], such as their family and community ties, place of residence, length of time in the United States, and record of employment," and thus "the probable value of a heightened standard of proof is thus less apparent when it comes to flight risk." *Id.*  The First Circuit's reasoning on this point lacks persuasive value for three reasons.

***First***, ICE is required by federal law to keep detailed statistics regarding detainees, including comprehensive information about their criminal history, and—for the many Section 1226(a) detainees with no criminal history whatsoever[6]—information regarding any immigration law violations, and "pending charges entered into [the] ICE system of record at the time of ICE custody." *See, e.g.,* ICE Detention Statistics, Detention Fiscal Year to Date 2026, Header, Facility Information, and Footnotes (2026), https://perma.cc/H6UZ-3PD9.[7]  In short, Respondents keep

---

[6] ICE statistics label many detainees as "no ICE threat level," indicating that these detainees have no criminal convictions and, in some cases, no immigration law violations.  *See, e.g.,* ICE Detention Statistics, Detention Fiscal Year to Date 2026, Facility Information and Footnotes (2026), https://perma.cc/H6UZ-3PD9.  This is particularly true of individuals detained under the statute at issue here, Section 1226(a), as opposed to the separate statute relevant to certain criminal offenders, Section 1226(c).  Individuals detained under Section 1226(a) often have lawful status in the country, may have children who are United States citizens, and may have resided and worked in this country peacefully for decades. *See id.*

[7] "The Court may take judicial notice of public documents and government documents because their sources 'cannot reasonably be questioned.'"  *Overall v. Ascension*, 23 F. Supp. 3d 816, 824–25 (E.D. Mich. 2014) (citing Fed. R. Evid. 201(b)) (collecting Sixth Circuit cases).

track of whether detainees attend immigration proceedings. *Id.*  Accordingly, the government faces the "straightforward task of marshalling evidence readily available" in meeting its burden on flight risk at a bond hearing for a detainee under Section 1226(a).  *See Hernandez-Lara*, 10 F.4th at 40.

**Second**, as the First Circuit itself recognized, (1) "noncitizens have no right to be provided with counsel in immigration proceedings and very often cannot obtain counsel on their own, particularly if they are detained"; (2) "detained individuals will likely experience difficulty in gathering evidence on their own behalf"; (3) "noncitizens subject to immigration detention often lack full proficiency in English; and (4) "immigration law and procedures and the particular preferences of individual IJs are likely much better known to government representatives than to detainees." *Hernandez-Lara*, 10 F.4th at 30–31; *accord Velasco Lopez*, 978 F.3d at 851.  These factors all indicate that the "individual should not be asked to share equally"—by application of a preponderance standard—"with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." *Addington*, 441 U.S. at 427; *Velasco Lopez*, 978 F.3d at 856–57 ("[I]t is improper to allocate the risk of error evenly between the individual and the Government when the potential injury is as significant as . . . liberty.")

**Third**, it is difficult to reconcile the First Circuit's application of a preponderance standard on the question of flight risk with the Supreme Court's clear statement, noted above, that "the individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity that due process requires the state to justify confinement by proof *more substantial than a mere preponderance of the evidence*." *See Addington*, 441 U.S. at 427 (emphasis added).

Accordingly, the Court concludes that Petitioner's current detention following the November 26, 2025 bond hearing violates Petitioner's right to due process.  Due process requires

that, to deny bond, the government must show by clear and convincing evidence that Petitioner is a flight risk or danger to the community.

## VII.    Other Claims and Forms of Relief

Because the Court will conditionally grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

## VIII.   Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action, and they seek the dismissal of all other named Respondents.  The Court concludes that the ICE Detroit Field Office Director is not the only proper Respondent for the reasons set forth in the Court's analysis of the same argument in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *8–9 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *9–10 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *9–10 (W.D. Mich. Dec. 12, 2025).

To ensure that this Court's Orders regarding a hearing or release will bind at least one Respondent with authority to act in the event that Petitioner is transferred out of the Western District of Michigan, the Court will retain the ICE Detroit Field Office Director and the Secretary for the Department of Homeland Security as Respondents.  The Court will dismiss the United States Attorney General as a Respondent.

## IX.  Conclusion

The Court will grant Petitioner's motion for an extension of time to file his reply brief (ECF No. 5) and unopposed motion for leave to file his reply brief *instanter* (ECF No. 6) and will direct

the Clerk's Office to file a copy of the reply brief attached to the motion (ECF No. 6, Ex. A at PageID.45–65.) as a separate docket entry.

For the reasons discussed above, the Court will enter a Judgment conditionally granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (ECF No. 1.)  The Court will order Respondents to provide Petitioner with an individualized bond hearing before an immigration judge, at which time the government will have the burden to demonstrate dangerousness or flight risk by clear and convincing evidence, or, in the alternative, immediately release Petitioner from custody.  The Court will also order Respondents to file a status report within six business days of the date of this Court's Opinion and Judgment to certify compliance with this Opinion and the corresponding Judgment.  The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was granted, the conditions of the bond, or if bond was denied, the reasons for the denial.  Further, the Court will dismiss the United States Attorney General as a Respondent.


Dated:     January 21, 2026             /s/ Jane M. Beckering
                                        Jane M. Beckering
                                        United States District Judge